**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Darryl Cling,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of the Social Security Administration,<br><br>　　　　　　　Defendant. | No. CV-12-08142-PHX-GMS<br><br>**ORDER** |

　　　　Pending before the Court is the appeal of Plaintiff Darryl Cling, which challenges the Social Security Administration's ("SSA") decision to deny benefits. (Doc. 1.) For the reasons set forth below, the Court affirms that decision.

## BACKGROUND

　　　　Plaintiff Darryl Cling claims that he has been disabled since May 20, 2001. (R. at 10.) He is 48 years old and has an eleventh grade education. (*Id.* at 96-98, 132.) Cling has worked as a construction laborer and a manager of a curio shop. (*Id.* at 129.) He filed a Title XVI application for supplemental security income on July 14, 2008. (*Id.* at 10.) The SSA denied his claims on October 23, 2008, and again on March 13, 2009. (*Id.*) Cling subsequently requested a hearing, which was held on December 17, 2010, in Tuba City, Arizona. (*Id.*) On April 7, 2011, the Administrative Law Judge ("ALJ") issued his decision finding that Cling was not disabled under section 1614(a)(3)(A) of the Social Security Act. (*Id.* at 20.)

To determine whether Cling was disabled, the ALJ undertook the five-step analysis detailed at 20 C.F.R. §§ 404.1520(a) and 416.920(a).[1] (R. at 10.) He determined at the first step that Cling had not engaged in substantial gainful activity since July 14, 2008, the application date. (*Id.* at 12.) The ALJ then found that Cling had the following severe impairments: Reiter's syndrome, hypertension, diabetes with mild peripheral neuropathy, and low back pain. (*Id.* at 12.) At step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the SSA's listed impairments. (*Id.*)

At that point, the ALJ made a determination of Cling's residual functional capacity ("RFC"),[2] concluding that Cling could perform medium work as defined in 20 C.F.R. § 416.967(a), except that he was "limited to frequent (not constant) use of the left lower extremity for pushing and pulling." (R. at 12.) Still at step four, the ALJ concluded that Cling had no past relevant work. (*Id.* at 19.) The ALJ therefore reached step five and found that Cling was not disabled because there were jobs that existed in significant numbers in the national economy that Cling could perform. (*Id.*) The Appeals Council declined to review the decision. (*Id.* at 1-3.)

---

[1] Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007) (internal citations and quotations omitted).

[2] RFC is the most a claimant can do despite the limitations caused by her impairments. *See* S.S.R. 96-8p (July 2, 1996).

Cling filed the Complaint in this action on July 16, 2012, seeking the Court's review of the ALJ's denial of benefits. (Doc. 1.) The matter became fully briefed on December 19, 2012. (Docs. 14, 15, 16.)

**DISCUSSION**

**I.     LEGAL STANDARD**

A reviewing federal court will address only the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits when that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

Subject to the Ninth Circuit's standards in particular cases, the ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted). However, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* (citing *Hammock v. Bowen,* 879 F.2d 498, 501 (9th Cir. 1989)). Nor may the Court "affirm the ALJ's . . . decision based on evidence that the ALJ did not discuss." *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003).

## II. ANALYSIS

Plaintiff argues that the ALJ erred by: (A) failing to consider the effect of other documented impairments and (B) improperly rejecting the opinions of Cling's treating physicians. The Court will address each argument in turn.

### A. Misinterpretation of the Evidence

Cling asserts that the ALJ failed to incorporate the following impairments into the RFC: left knee problems, kidney disease, and various mental impairments.[3] The ALJ is required to consider all relevant medical evidence in his decision. 20 C.F.R. § 404, Subpt. P, App. 2; *see Reddick v. Chater*, 157 F.3d 715, 724-25 (9th Cir. 1998). The ALJ, however, is not required to incorporate every alleged impairment in the RFC if the existence and severity of that impairment is not supported by the record. *See Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) (looking to record evidence as a whole to determine whether claimant was disabled); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (no need to incorporate impairments that have minimal effects on ability to work).

Cling cites an MRI of his left knee that showed an injury of the medial collateral ligament, degenerative changes in both menisci, and a partial thickness injury of the posterior cruciate ligament. (R. at 214.) Cling claims that the ALJ ignored this evidence of a knee injury that could have had a substantial effect on his ability to work. But the ALJ did discuss the knee. (*Id.* at 18.) He found that Cling would not be able to constantly use his left lower extremity for pushing and pulling because of those MRI results. (*Id.* at 12, 18.) Cling cites no further evidence of treatment or any other consultations with physicians that would shed light on the severity of his knee problems. Indeed, the only references to his knee are that it had good function with medication. (*Id.* at 187, 189.) For example, Dr. Barker examined the knee seven months after the MRI and found that "[e]xamination specifically of the left knee failed to disclose any heat, swelling,

---

[3] Cling also claims that the ALJ's reference to "medically managed" diabetes and "clinically managed" hypertension, (R. at 12,) was in error. An examination of the record and the ALJ's decision reveals that the ALJ was simply referencing the fact that Cling was on appropriate medication for those impairments.

- 4 -

deformity, crepitation, or instability in any direction." (*Id.* at 189.) The ALJ therefore properly evaluated Cling's knee problems.

Cling next cites a diagnosis of "chronic stage four kidney disease" by Dr. Karen Purdy in February 2010. (*Id.* at 330.) The ALJ addressed this evidence, but found that Cling had presented no other evidence of kidney disease or its impact on him. (*Id.* at 17.) Indeed, Dr. Purdy's one-line diagnosis is the only instance—before and after February 2010—where a physician observed kidney disease. (*Id.* at 300, 303, 306, 309-10, 314, 318, 321, 324, 350.) Dr. Purdy is at least an examining physician, which means that her opinion receives added weight by default. *See Orn v. Astrue*, 495, F.3d 625, 631 (9th Cir. 2007); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); 20 C.F.R. § 404.1527. No other physician directly contradicts it, but the complete absence of evidence regarding treatment, subsequent diagnosis, and effect of the kidney disease is a valid reason for the ALJ to not incorporate kidney disease in his analysis. The ALJ properly refused to find limitations from kidney disease.

Cling finally cites the opinion of the psychological examiner, Dr. Steven Patrick, that he has poor attention and concentration. (R. at 353.) He claims that this raises a substantial question as to his ability to work. As the ALJ observed, however, Dr. Patrick's analysis goes on to state that Cling's "poor attention and concentration appears to only minimally impact his abilities." (*Id.* at 354.) The ALJ properly considered the record as a whole and did not assign limitations based on Cling's mental impairments.

Cling has failed to show that the ALJ improperly ignored various impairments.

### B.   Opinions of Treating Physicians

Cling claims that four treating or examining physicians stated that he was incapable of full-time work, and that the ALJ improperly rejected those opinions. It is well-established that the opinion of a treating physician is given more weight than non-treating and non-examining medical sources. *See Orn*, 495 F.3d at 631. When the treating doctor's opinion is uncontradicted, the ALJ can reject those conclusions only for "'clear and convincing' reasons." *Lester*, 81 F.3d at 830 (quoting *Baxter v. Sullivan*, 923 F.2d

1391, 1396 (9th Cir. 1991)). Even when another doctor disagrees with the treating doctor's opinion, the ALJ can reject the treating doctor's conclusions only when he provides "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Opinions on the ultimate issue of disability, however, are not medical opinions, and do not receive the same level of deference according to the SSA regulations. 20 C.F.R. § 404.1527(d). That issue is reserved for the ALJ. *Id.* Although the ALJ is not "bound" by a controverted opinion of the treating physician on disability, he can reject that opinion only by citing "specific and legitimate reasons supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lexter*, 81 F.3d at 830. In reality, then, the "reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion." *Reddick*, 157 F.3d at 725.

The ALJ discussed only two of the disability forms, those completed by Drs. Purdy and Weissman. (R. at 15-16, 334, 350.) The ALJ correctly observed that neither doctor had been treating Cling over a lengthy period of time. (*Id.* at 15-16.) Dr. Weissman had actually never treated Cling before he made his report. One of the central factors an ALJ should consider when deciding whether to reject the opinion of a treating doctor are the "'[l]ength of the treatment relationship and the frequency of examination' by the treating physician; and the 'nature and extent of the treatment relationship' between the patient and the treating physician." *Orn*, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(c)(2)(i)-(ii)). Moreover, the forms submitted by both doctors are cursory, check-the-box forms with no explanation on how Cling's symptoms impact his ability to work. The ALJ may "reject[ ] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Furthermore, as the ALJ notes, the overall thrust of the medical evidence presented does not reveal debilitating symptoms. An examination of the many reports submitted indeed shows diabetes and high blood pressure, but the consistent words used

to describe Cling were "normal" and "regular." (*Id.* at 188-89, 204, 207-08, 211, 300, 3030, 306, 309, 312-13, 317, 320, 323, 326, 329, 332, 336, 339, 345, 360.) His treating doctors only ever prescribed him moderate doses of medication. (*Id.*) No procedures were ever performed. Cling has cited no evidence that substantiates the opinion of Drs. Purdy and Weissman that he cannot work. He contests, however, the contrary conclusions of the state agency examiners Drs. Barker and Wavak. Those doctors concluded that Cling would not face significant work limitations for at least a year. (*Id.* at 187-201.) Cling asserts that those opinions are outdated and that subsequent developments have exacerbated his injuries. Yet he does not cite any evidence in the record for this proposition. The Court has reviewed the record and the evidence cited by the ALJ and finds that the ALJ did not improperly reject the opinions of Drs. Purdy and Weissman in favor of Drs. Barker and Wavak. He provided specific and legitimate reasons for rejecting the opinions of Drs. Purdy and Weissman that Cling was unable to work.

There were, however, two other doctors who provided opinions on Cling's inability to work that were not discussed by the ALJ. Drs. Roth and Henderson provided similar opinions to Drs. Purdy and Weissman on the exact same form. (*Id.* at 348-49.) Particularly because Dr. Roth actually treated Cling for a period of time (unlike the other three), the ALJ's failure to discuss those opinions was in error. Those doctors were treating or examining physicians and the ALJ cannot ignore them.

That error, however, was harmless. Harmless errors in the ALJ's decision do not warrant reversal. *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1055–56 (9th Cir. 2006). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders,* 556 U.S. 396, 409 (2009). Generally, errors are harmless where they are "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (9th Cir. 2012) (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). Thus, for example, errors are harmless if the record shows that "the ALJ would have reached the same result absent the error" or "it was clear [the errors] did not alter the ALJ's

decision." *Id.* The forms provided by Drs. Roth and Henderson add nothing to the information that the ALJ considered. As discussed above, the conclusions that Cling was unable to do any work do not find any justification in the record. Therefore, the failure to expressly consider the reports of Drs. Roth and Henderson was harmless error.

## CONCLUSION

The ALJ's decision to deny benefits was supported by substantial evidence. Cling's arguments to the contrary are without merit. The Court therefore affirms the decision of the ALJ.

**IT IS THEREFORE ORDERED** that the ALJ's decision is **AFFIRMED.**

Dated this 4th day of April, 2013.

G. Murray Snow
United States District Judge